## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK, as Administrative Agent, Collateral Agent, Lender and Issuer<br><br>Plaintiff,<br><br>v.<br><br>FOURTH STREET BARBECUE INC.<br><br>Defendant. | Civil Action No: 2:25-cv-01537-PLD |

### EMERGENCY MOTION OF THE RECEIVER FOR AN ORDER (I) APPROVING TRANSITION SERVICES AND FUNDING AGREEMENT; (II) SCHEDULING AN EXPEDITED HEARING ON SALE OF COMPANY ASSETS; AND (III) APPROVING SALE OF COMPANY ASSETS AT THE EXPEDITED HEARING

AND NOW, the Receiver, JS Held, LLC d/b/a MorrisAnderson & Associates, Ltd. and Mr. Mark Welch (together, the "Receiver"), by and through their undersigned counsel, moves (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) approving the Transition Services and Funding Agreement (the "TSFA") with Arla Foods, LLC (the "Buyer"); (ii) scheduling a hearing on an expedited basis to consider the sale of the Purchased Assets, as defined in the *Asset Purchase Agreement* (the "APA" and, together with the TSFA, the "Sale Documents") to the Buyer free and clear of liens, claims, and encumbrances (the "Proposed Sale"); and (iii) approving the Proposed Sale. The Receiver, Buyer, Plaintiff and Lenders (as defined below) are diligently working to finalize and execute the TSFA and APA and the Receiver will file final and executed copies of the proposed Sale Documents prior to any hearing on this Motion. In further support of this Motion, the Receiver avers as follows:

**BACKGROUND**

**A.      Receivership Background and Current Operations**

1.      On October 3, 2025, Huntington National Bank, in its capacity as Administrative Agent and as a Lender (the "Plaintiff"), filed Plaintiff the *Huntington National Bank's Complaint for Breach of Credit Agreement* [ECF No. 1] in the United States District Court for the Western District of Pennsylvania (this "Court") commencing the above-subject action (this "Action") against Fourth Street Barbecue Inc. (the "Company").

2.      On October 8, 2025, Plaintiff filed the *Consent Motion of the Huntington National Bank for Appointment of Receiver* [ECF No. 7] (the "Consent Receivership Motion")[1] seeking, *inter alia*, the appointment of the Receiver for corporate entity and the assets of the Company (collectively, the "Receivership Estate").

3.      On October 20, 2025, the Court entered the *Order Appointing Receiver* [ECF No. 20] (the "Original Receivership Order") appointing the Receiver for the Company's corporate entity and for the Collateral for the purpose of managing, protecting, preserving, operating (if necessary) and selling the Company's business or some or all of the Company Assets (the "Receivership").  On November 3, 2025, the Original Receivership Order was modified [ECF No. 33] (the "Receivership Order")[2] to provide additional protections to the Receivership Estate and clarification of the Receiver's duties and obligations.

4.      The Receiver, as authorized under the Receivership Order, continues to operate the Company.  However, the Company's liquidity is critically low levels and unable to support

---

[1] On October 7, 2025, the Plaintiff filed its initial Consent Receivership Motion [ECF No. 4], but this initial Motion was rejected due to an Errata as indicated by the Clerk's Office Quality Control Message docketed on October 8, 2025.  On October 8, 2025, the Plaintiff filed a corrected Consent Receivership Motion [ECF No. 7] correcting the Errata.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Receivership Order.

continued operations beyond November 30, 2025. A cash infusion is desperately needed for the Company to continue to operate—including to ensure the Company can make payroll to employees—and to maintain the Company's value through approval and completing the Proposed Sale and correspondingly saves jobs for employees, a tenant for landlords, a customer for vendors, and a supply source for customers.

**B.    Marketing of the Company Assets**

5.      The Receivership Order authorizes the Receiver to, among other things and subject to the rights and interests and for the benefit of Plaintiff and the Lenders, to sell all or any portion of the Company Assets and to do all acts and things necessary or advisable in connection with such sale. See Receivership Order ¶ 22. The Receiver has been dutifully performing its responsibilities as required by the Receivership Order, including, but not limited to, operating the Company while determining how to maximize the Company's Assets for the benefit of all parties in interest—either through a sale transaction, liquidation, or otherwise.

6.      Prior to the commencement of this action and appointment of the Receiver, the Defendant, under the direction of a Chief Restructuring Officer and Investment Banker (both installed with the consent and approval of the Plaintiff and Lenders), the Company Assets were aggressively marketed for sale, but no sale transaction materialized or closed.

7.      Specifically, the Company engaged SC&H Capital, an investment Bank, in or about January 2025 to conduct a marketing and sale process. SC&H and the Company prepared a teaser memorandum, confidential information memorandum, and non-disclosure agreement, and distributed the teaser memorandum to over two hundred (200) potential buyers. The Company also created a virtual data room for potential buyers to perform due diligence in the event such

interested parties executed a non-disclosure agreement and wished to evaluate the potential deal further.

8.      Of the two hundred (200) potential buyers who received the teaser memorandum, ninety four (94) executed non-disclosure agreements and conducted due diligence.  From this subset of potential buyers, thirteen (13) provided Indications of Interest and one (1) provided a letter of intent.   Despite the robust process, and initially strong interest, an agreement never developed and no sale of any Company Assets occurred.

9.      In October 2025, the Buyer contacted the Receiver to negotiate the potential purchase of the Company Assets, the product of those arm-length negotiations resulting in the proposed Sale Documents.

**C.      The Sale Documents**

10.      In light of the Buyer's desire to purchase substantially all of the Company Assets and the Company's immediate need for cash, the parties negotiated the terms of the proposed TSFA.  Generally, the proposed TSFA facilitates the transition of operations from the Receiver, subject to the Receiver's authority, rights and duties under the Receivership Order, to the Buyer pre-closing on the APA and provides the Company with much needed liquidity to sustain its operations pending this Court's consideration and approval of the Proposed Sale.  The proposed TSFA memorializes the following key terms:

> a.  On the Effective Date, as will be defined in the TSFA, and at the direction and subject to discretion of the Receiver, the Buyer will provide, supply, and render management and operational support services for operating the Company.

> b.  On the Effective Date, the Buyer will advance those amounts (the "Advances") to the Receiver for the operation of the Company in accordance with the Budget attached to the TSFA up to the cap of $1,424,000.00, which Budget is contemplated to provide for the ongoing operations of the Company through this Court's approval and closing of the Proposed Sale.

    c.   The Advances shall be secured by a continuing, valid, binding, enforceable, non-avoidable and automatically perfected first priority security lien upon all Purchased Assets (the "<u>Advance Lien</u>").  Any Advance Lien shall be senior in priority to all security interest of Plaintiff and the Lenders, but junior to pre-existing valid and perfected liens in particular personal property, including capital lessors.

11.    As explained, the terms of the proposed TSFA were negotiated in contemplation of consummating the Proposed Sale as detailed in the proposed APA.  Pursuant to the proposed APA, the Buyer shall purchase, acquire and accept from the Receiver the Purchased Assets (as more fully described in the APA, the "<u>Purchased Assets</u>"), which are substantially all of the Company Assets.

12.    In exchange for the Purchased Assets, the Buyer shall provide the following consideration (the "<u>Purchase Price</u>"):

    a.   Payment in cash of Three Million and 00/100 Dollars ($3,000,000.00); plus

    b.   the assumption of the Assumed Liabilities, as defined in the APA, which includes certain of the Company's real and personal property leases.

13.    In exchange for the Purchase Price, the Receiver shall sell, transfer, convey, assign and deliver to the Buyer all of the right, title and interest of the Company in and to the Purchased Assets free and clear of all claims, encumbrances, and interests, but specifically excluding the Excluded Assets which are described in the APA.  Importantly, the Proposed Sale will provide for claims asserting a security interest, encumbrance, right or otherwise in the Purchased Assets including but not limited to those arising under the Perishable Agricultural Commodities Act ("<u>PACA</u>"), the Packers and Stockyards Act of 1921 ("<u>PASA</u>"), and state law PACA and / or PASA equivalents will attach to the Purchase Price proceeds in the same priority and amount as currently exists against any Purchased Asset(s) and the right to payment, if any, by such claimants shall be limited solely to the Purchase Price proceeds.  In addition, and for the avoidance of doubt, the

Company does not own any real property and, therefore, the Purchased Assets do not include any real property.  The going concern Proposed Sale not only maximizes recovery to stakeholders, it ensures the continuity of the Company's operations including the use of landlord-owned facilities and lender-owned equipment as well as the retention of more than two hundred (200) employees, a customer for vendors, and a supply source for customers.

### JURISDICTION, VENUE, AND STATUTORY PREDICATES

14.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

15.    Venue is proper pursuant to 28 U.S.C. § 1391.

16.    The bases for the relief requested herein are Rule 66 of the Court's Local Rules ("LCvR"), the Receivership Order, and 28 U.S.C. § 2001 and2004.

### RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED

17.    By this Motion, the Receiver seeks entry of an order (i) approving the TSFA on an emergency basis, **before November 30, 2025**, (ii) setting a hearing to consider approval of the APA and Proposed Sale on an expedited basis, as soon as within **fourteen (14) days** of the filing of this Motion or as promptly thereafter as the Court's calendar otherwise will permit, and (iii) approval of the Proposed Sale.   Again the proposed Sale Documents will be filed by the Receiver prior to any hearing on this Motion.

**A.    The TSFA Should be Considered and Approved on an Emergency Basis.**

18.    The Receivership Order charges the Receiver with the obligation to manage, protect, preserve, operate, and sell the Company's business for the benefit of parties in interest and grants the receiver all powers necessary to do so, which powers include the ability to obtain additional financing as the Receiver deems necessary.   See Receivership Order, ¶ 18.

19.     As stated, the Company cannot afford to operate, including payment of employees, beyond November 2025.  The infusion of cash provided under the proposed TSFA is critical to the continued viability of the Company generally and, specifically, to enable the Company the necessary runway to, as a going concern, obtain this Court's approval and close the Proposed Sale—a transaction that inures to the benefit of all parties in interest.  As such, the Receiver respectfully requests the Court consider and approve the proposed TSFA by **November 30, 2025**. Alternatively, the Receiver will need to immediately cease all operations, terminate employees, and liquidate the Company and its assets—an alternative that leaves stakeholders far worse off than the Proposed Sale.

**D.     The Proposed Sale Should be Set for Hearing on an Expedited Basis.**

20.     The Receiver respectfully submits that the Receivership Order contemplates and 28 U.S.C. § 2004 authorizes obtaining approval of the Proposed Sale on an expedited basis. Specifically, the Receivership Order authorizes the Receiver to sell the Company Assets and, where the Receiver reaches an agreement with a buyer, to file a motion with the Court for the approval of such sale.   See Receivership Order, ¶ 24.  While a private sale of real estate must adhere to the specific requirements of 28 U.S.C. § 2001 as to the number of bids and a court hearing to confirm the sale, subjecting the sale of certain items of personal property to the same stringent requirements may be oppressive and inefficient for a receivership.  For this reason, and pursuant to the express permission granted by 28 U.S.C. § 2004, the Receiver requests that the Proposed Sale be exempted from the requirements of 28 U.S.C § 2001 applied to real property and be considered and approved on an expedited basis.

21.     Regarding consideration of the Proposed Sale, when appointing a receiver, federal courts have looked to the U.S. Bankruptcy Code and bankruptcy cases for guidance as to the

powers to be granted to a receiver and the duties to be carried out by a receiver. See, e.g., CFTC v. Lake Shore Asset Management Ltd., et al, 646 F.3d 401 (7th Cir. 2011). Here, the Proposed Sale, which is intended to transfer the Purchased Assets to the Buyer free and clear of all liens, claims, and encumbrances, satisfies the standards governing the allowance of similar asset sales under the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). Section 363(b) of the Bankruptcy Code specifically authorizes the sale of bankruptcy estate assets after notice and a hearing, stating that "[a] trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

22.     Courts have uniformly held that the approval of a proposed sale of a bankruptcy estate's assets outside the ordinary course of business is appropriate if a court finds that sound business reasons justify the sale. See In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986); In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (elements necessary for approval of section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"). Once a debtor has articulated a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re S.N.A. Nut Company, 186 B.R. 98 (Bankr. N.D. Ill. 1995) ("a presumption of reasonableness attaches to a debtor's management decisions"). Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making. Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981).

23.     Here, the Proposed Sale is supported by the Receiver's sound business judgment, is in exchange for fair and reasonable consideration, and is proposed in good faith. After a thorough pre-Receivership marketing process of the Company Assets to potentially interested parties, only the Buyer has provided an actionable offer.  As such, the Receiver believes that the Proposed Sale will maximize the value that the Receiver can obtain for the Company's Assets as compared to continuing operations (which is not feasible without the funding from the proposed TSFA) or a liquidation.  Further, the Proposed Sale provides the continued use of facilities and equipment for the benefit of landlords and lenders, continued operations for the benefit of customers, as well as the continued employment for the Company's more than two hundred (200) employees.  For these reasons, the Proposed Sale should be approved.  Further, the Proposed Sale should be considered and approved on an expedited basis.  There is an urgent need to close the Proposed Sale with the Buyer as the Company is operating at a loss and will need to cease operations if the Proposed Sale is not promptly approved by this Court and the Proposed Sale closes immediately following Court-approval.

24.     Accordingly, the Receiver respectfully requests this Court conduct a hearing to consider approval of the Proposed Sale within **fourteen (14) days** of the filing of this Motion or as promptly thereafter as the Court's calendar otherwise will permit and that, ultimately, that the Proposed Sale is approved as a sound exercise of the Receiver's business judgment.

25.     Notice of any Order scheduling a hearing to consider approval of the Proposed Sale will be served immediately upon all creditors and parties in interest as required under paragraph 23 of the Receivership Order.

## **PRAYER FOR RELIEF**

WHEREFORE, the Receiver requests that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**:  (i) approving the TSFA on an emergency basis; (ii) setting a hearing to consider approval of the APA and Proposed Sale on an expedited basis; and, ultimately, (iii) approving the Proposed Sale.

Respectfully submitted,

CAMPBELL & LEVINE, LLC

Dated:  November 21, 2025          By: */s/ Alexis A. Leventhal*
Alexis A. Leventhal, Esq.
PA I.D. No. 324472
aleventhal@camlev.com
Paul J. Cordaro, Esq.
PA I.D. No. 85828
pcordaro@camlev.com
310 Grant St., Suite 1700
Pittsburgh, PA 15219
Tel: 412-261-0310
Fax: 412-261-5066

*Counsel for the Receiver*

{C1290074.1 }                          -10-