IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK, as Administrative Agent, Collateral Agent, Lender and Issuer<br><br>Plaintiff,<br><br>v.<br><br>FOURTH STREET BARBECUE INC.<br><br>Defendant. | Civil Action No: 2:25-cv-01537-PLD |

**RECEIVER'S EXPEDITED MOTION FOR AN ORDER APPROVING
(I) EMPLOYMENT OF AUCTIONEER; (II) SALE OF COMPANY ASSETS; AND
(III) NOTICE PROCEDURES RELATED THERETO**

AND NOW, the Receiver, JS Held, LLC d/b/a MorrisAnderson & Associates, Ltd. and Mr. Mark Welch (together, the "Receiver"), by and through their undersigned counsel, moves (this "Motion") for (a) entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Notice and Hearing Order") (i) scheduling a hearing on this Motion on an expedited basis and (ii) approving the form of notice (the "Auctioneer Notice") attached as **Exhibit 1** to the Proposed Notice and Hearing Order to be sent to all creditors of the Company and parties in interest providing notice of the relief sought by this Motion; and, upon notice and an expedited hearing, (b) entry of an order substantially in the form attached hereto as **Exhibit B** (the "Proposed Auction Order") approving (i) the employment of Hyperams, LLC (the "Auctioneer") as auctioneer pursuant to the Auction Agreement attached hereto as **Exhibit C** (the "Auction Agreement") and (ii) the liquidation of certain inventory and auction sale of certain personal property free and clear of any and all claims, liens, and other encumbrances, including PACA/PASA Claims (as defined

herein), with any such liens, claims, or other encumbrances attaching in amount and priority as existed in the sold Company Asset(s) at the time of the sale in accordance with the terms of the Auction Agreement. In support of this Motion, the Receiver states as follows:

## BACKGROUND

A.  **Receivership Background and Current Operations**

1. On October 3, 2025, Huntington National Bank, in its capacity as Administrative Agent and as a Lender (the "Plaintiff"), filed Plaintiff the *Huntington National Bank's Complaint for Breach of Credit Agreement* [ECF No. 1] in the United States District Court for the Western District of Pennsylvania (this "Court") commencing the above-subject action (this "Action") against Fourth Street Barbecue Inc. (the "Company").

2. On October 8, 2025, Plaintiff filed the *Consent Motion of the Huntington National Bank for Appointment of Receiver* [ECF No. 7] (the "Consent Receivership Motion")[1] seeking, *inter alia*, the appointment of the Receiver for corporate entity and the assets of the Company (collectively, the "Receivership Estate").

3. On October 20, 2025, the Court entered the *Order Appointing Receiver* [ECF No. 20] (the "Original Receivership Order") appointing the Receiver for the Company's corporate entity and for the Collateral for the purpose of managing, protecting, preserving, operating (if necessary) and selling the Company's business or some or all of the Company Assets (the "Receivership"). On November 3, 2025, the Original Receivership Order was modified [ECF No.

---

[1] On October 7, 2025, the Plaintiff filed its initial Consent Receivership Motion [ECF No. 4], but this initial Motion was rejected due to an Errata as indicated by the Clerk's Office Quality Control Message docketed on October 8, 2025. On October 8, 2025, the Plaintiff filed a corrected Consent Receivership Motion [ECF No. 7] correcting the Errata.

33] (the "Receivership Order")[2] to provide additional protections to the Receivership Estate and clarification of the Receiver's duties and obligations.

4. On November 14, 2025, the Receiver filed the *Motion of the Receiver for an Order (I) Establishing Exclusive Procedures for the Assertion, Resolution and Satisfaction of Pre-Receivership Claims Arising under the Perishable Agricultural Commodities Act, the Packers and Stockyards Act of 1921 and State Law Equivalents, and (II) Approving the Manner of Notice Thereof* (the "PACA/PASA Motion") [ECF No. 40] seeking a bar date of January 2, 2026, for claimants asserting PACA/PASA Claims (as defined in the PACA/PASA Motion) and procedures for resolving and satisfying asserted claims. As explained in the PACA/PASA Motion, PACA/PASA Claims are generally entitled to prompt payment from the PACA/PASA Trust Assets, as applicable, and ahead of secured, priority, and unsecured creditors. See PACA/PASA Motion at ¶ 9. Here, the PACA/PASA Claims may be entitled to payment from Company Assets contemplated to be sold pursuant to the Proposed Sale (as defined below).

5. The Receiver, as authorized under the Receivership Order, continues to operate the Company. However, the Company's liquidity is at critically low levels, the Company is unable to support continued operations, and the Company Assets must be liquidated.

B. **Marketing of the Company Assets**

6. Prior to the commencement of this action and appointment of the Receiver, the Defendant, under the direction of a Chief Restructuring Officer and Investment Banker (both installed with the consent and approval of the Plaintiff and Lenders), the Company Assets were aggressively marketed for sale, but no sale transaction materialized or closed.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Receivership Order.

7. Specifically, the Company engaged SC&H Capital, an investment Bank, in or about January 2025 to conduct a marketing and sale process. SC&H and the Company prepared a teaser memorandum, confidential information memorandum, and non-disclosure agreement, and distributed the teaser memorandum to over two hundred (200) potential buyers. The Company also created a virtual data room for potential buyers to perform due diligence in the event such interested parties executed a non-disclosure agreement and wished to evaluate the potential deal further.

8. Of the potential buyers who received the teaser memorandum, ninety four (94) executed non-disclosure agreements and conducted due diligence. From this subset of potential buyers, thirteen (13) provided Indications of Interest and one (1) provided a letter of intent. Despite the robust process, and initially strong interest, an agreement never developed and no sale of any Company Assets occurred.

9. While a potential purchaser contacted the Receiver in October 2025 about a potential going-concern sale of the Company Assets, an agreement could not be reached on the terms of such potential sale with the Plaintiff and the Lenders. At this juncture, the Receiver must proceed with winding down the Company and liquidating the Company Assets.

C. **The Company Assets and Auction Agreement**

10. As authorized and directed by the Receivership Order, the Receiver has been operating the Company and has inventoried the personal property of the Company.

11. The premises contain the Company Assets which include substantial inventory, equipment, various furniture and fixtures. An accounting of these Company Assets are described in <u>Schedule A</u> attached to the Auction Agreement.

12. The Receiver has requested and received a proposal from the Auctioneer to conduct an auction sale of the Company Assets, which the Receiver and Auctioneer negotiated as memorialized in the Auction Agreement. Auctioneer is an experienced appraiser and licensed, insured and bonded auctioneer with over fifty years' experience, and is regularly retained to conduct auction sales by receivers, trustees, financial institutions and other fiduciaries.

13. Pursuant to the Auction Agreement, Auctioneer proposes to be engaged to conduct the liquidation of inventory (the "<u>Liquidation</u>", as further defined in the Auction Agreement) and auction of non-inventory Company Assets through an item-by-item auction or in groups, as best suited for auction as determined by Auctioneer (the "<u>Auction</u>", as further defined in the Auction Agreement and, together with the Liquidation, the "<u>Proposed Sale</u>").  Upon approval of the employment of Auctioneer, the Liquidation will commence and continue on a rolling basis until completed and the Auction will be conducted with live online bidding with a dedicated website auctioneer anticipated to be conducted on January [•], 2026.

14. Auctioneer will be compensated with (i) a 5% seller's commission of the Liquidation portion of the Proposed Sale; (ii) reasonable expenses actually incurred and documented in preparing for, conducting, and concluding the Auction in the amount of (a) $100,000 for the Auction, (b) $3,750 per week for an inventory manager utilized during the Liquidation, (c) marketing costs for the Liquidation not to exceed $40,000, and (d) any out of pocket travel costs over $750 incurred during the Liquidation; and (iii) an 18% buyer's premium to be charged and collected from each successful bidder, not the Receiver or from the sale proceeds.

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

15. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

16. Venue is proper pursuant to 28 U.S.C. § 1391.

17. The bases for the relief requested herein are Rule 66 of the Court's Local Rules ("LCvR"), the Receivership Order, and 28 U.S.C. §§ 2001 and 2004.

## RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED

18. By this Motion, the Receiver seeks entry of: (a) the Proposed Notice and Hearing Order (i) scheduling a hearing on this Motion on an expedited basis and (ii) approving the Auctioneer Notice to be sent to all creditors of the Company and parties in interest providing notice of the relief sought by this Motion; and, upon notice and an expedited hearing, (b) the Proposed Auction Order (i) approving the Auction Agreement and (ii) the liquidation of certain inventory and auction sale of certain personal property free and clear of any and all claims, liens, and other encumbrances, including PACA/PASA Claims, with any such liens, claims, or other encumbrances attaching in amount and priority as existed in the sold Company Asset(s) at the time of the sale.

19. The Receiver respectfully submits that the Receivership Order contemplates and 28 U.S.C. § 2004 authorizes obtaining approval of the Proposed Sale on an expedited basis.

20. The Receivership Order authorizes the Receiver to, among other things and subject to the rights and interests and for the benefit of Plaintiff and the Lenders, to sell all or any portion of the Company Assets and to do all acts and things necessary or advisable in connection with such sale. See Receivership Order ¶ 22. The Receivership Order further authorizes the Receiver to employ such professional as necessary to liquidate the Company Assets. Id. at ¶¶ 22 and 24.

21. While a private sale of real estate must adhere to the specific requirements of 28 U.S.C. § 2001 as to the number of bids and a court hearing to confirm the sale, subjecting the sale of certain items of personal property to the same stringent requirements may be oppressive and

inefficient for a receivership. For this reason and the fact that the Company Assets are solely comprised of personal property (and no real property), and pursuant to the express permission granted by 28 U.S.C. § 2004, the Receiver requests that the Proposed Sale be exempted from the requirements of 28 U.S.C § 2001 applied to real property and be considered and approved on an expedited basis. Further, the Receiver requests that the Company Assets sold pursuant to the Proposed Sale be free and clear of liens, claims, and encumbrances (including those of PACA/PASA Claims), with such liens, claims, and encumbrances attaching to the proceeds of the Proposed Sale in the same amount and priority as existed in the sold Company Asset(s).

22.     When appointing a receiver, federal courts have looked to the U.S. Bankruptcy Code and bankruptcy cases for guidance as to the powers to be granted to a receiver and the duties to be carried out by a receiver. See, e.g., CFTC v. Lake Shore Asset Management Ltd., et al, 646 F.3d 401 (7th Cir. 2011). Here, the Proposed Sale, which is intended to transfer Company Assets to one or more purchasers free and clear of all liens, claims, and encumbrances, satisfies the standards governing the allowance of similar asset sales under the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). Section 363(b) of the Bankruptcy Code specifically authorizes the sale of bankruptcy estate assets after notice and a hearing, stating that "[a] trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

23.     Courts have uniformly held that the approval of a proposed sale of a bankruptcy estate's assets outside the ordinary course of business is appropriate if a court finds that sound business reasons justify the sale. See In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986); In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987)

(elements necessary for approval of section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").  Once a debtor has articulated a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." <u>In re S.N.A. Nut Company</u>, 186 B.R. 98 (Bankr. N.D. Ill. 1995) ("a presumption of reasonableness attaches to a debtor's management decisions").  Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making. <u>Summit Land Co. v. Allen (In re Summit Land Co.)</u>, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

24. Here, the Proposed Sale is supported by the Receiver's sound business judgment, employs a process that exchanges Company Assets for fair and reasonable consideration, and is proposed in good faith. After a thorough pre-Receivership marketing process of the Company Assets to potentially interested parties, there are no actionable offers and the Receiver must liquidate the Company and its assets.  As such, the Receiver believes that the Proposed Sale will maximize the value that the Receiver can obtain for the Company's Assets.

## **REQUEST FOR EXPEDITED RELIEF**

25. The Proposed Sale should be considered and approved on an expedited basis to limit ongoing Receivership costs including, among other things, rent for the premises, utilities, and retention of the Receiver, its professionals, as well as certain employees necessary to assist with the Proposed Sale.  Accordingly, there is an urgent need to employ the Auctioneer and for it to proceed with engaging the Auctioneer and proceeding with Proposed Sale.

26. Accordingly, the Receiver respectfully requests this Court conduct a hearing to consider employment of the Auctioneer and approval of the Proposed Sale within **fourteen (14) days** of the filing of this Motion or as promptly thereafter as the Court's calendar otherwise will permit and that, ultimately, that employment of the Auctioneer and the Proposed Sale is approved as a sound exercise of the Receiver's business judgment.

27. If approved, the Receiver will immediately serve the Auction Notice on all creditors of the Company and parties in interest to this Receivership to provide notice of this Motion and advise of any hearing and response dates on this Motion.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver requests that this Court enter (a) the Proposed Notice and Hearing Order (i) scheduling a hearing on this Motion on an expedited basis and (ii) approving the Auctioneer Notice to be sent to all creditors of the Company and parties in interest providing notice of the relief sought by this Motion; and, upon notice and an expedited hearing, (b) the Proposed Auction Order (i) approving the Auction Agreement and (ii) the liquidation of certain inventory and auction sale of certain personal property free and clear of any and all claims, liens, and other encumbrances, including PACA/PASA Claims, with any such liens, claims, or other encumbrances attaching in amount and priority as existed in the sold Company Asset(s) at the time of the sale.

[*The remainder of this page is intentionally left blank.*]

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CAMPBELL & LEVINE, LLC |
| Dated: December 5, 2025 | By: */s/ Alexis A. Leventhal* |
|  | Alexis A. Leventhal, Esq. |
|  | PA I.D. No. 324472 |
|  | aleventhal@camlev.com |
|  | Paul J. Cordaro, Esq. |
|  | PA I.D. No. 85828 |
|  | pcordaro@camlev.com |
|  | 310 Grant St., Suite 1700 |
|  | Pittsburgh, PA 15219 |
|  | Tel: 412-261-0310 |
|  | Fax: 412-261-5066 |
|  | *Counsel for the Receiver* |